# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

FILED
FEB 17 2012
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

—oOo—

UNITED STATES OF AMERICA

v.

Robb Harrison CHEAL, Nadeem KHAN, Robert CARILLO, and Ryan CHEAL

**SEALED**

**CRIMINAL COMPLAINT**

CASE NUMBER:

2:12-MJ-0050 KJN

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. On or about **see below** in **Butte** County and elsewhere, in the Eastern District of California defendants did the following:

**Count One:** Defendants Robb Harrison CHEAL, Nadeem KHAN, Robert CARILLO, and Ryan CHEAL with participating in a criminal conspiracy to manufacture at least 1,000 marijuana plants and possess with intent to distribute at least 1,000 kilograms of marijuana, a Schedule I Controlled Substance, between approximately October 1, 2011, and November 8, 2011, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

**Count Two:** Defendants Robb Harrison CHEAL, Nadeem KHAN, Robert CARILLO, and Ryan CHEAL with manufacture of at least 1,000 marijuana plants and possession with intent to distribute at least 1,000 kilograms of marijuana, between on or about October 1, 2011, and , November 8, 2011, in violation of 21 U.S.C. § 841(a)(1).

**Count Three:** Defendants Robb Harrison CHEAL, Nadeem KHAN, Robert CARILLO, and Ryan CHEAL with possession with intent to distribute marijuana, on or about October 12, 2011, in violation of 21 U.S.C. § 841(a)(1).

I further state that I am a DEA Special Agent and that this complaint is based on the following facts:

▸ **PLEASE SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part of this complaint: **X**

Signature of Complainant   Brian M. Nehring, Special Agent
Drug Enforcement Administration

Sworn to before me, and signed in my presence
February 17, 2012     at     Sacramento     California

Date                              City              State

Kendall J. Newman     United States Magistrate Judge
Name of Judge               Title of Judge                   Signature of Judge

# Affidavit of Special Agent Brian Nehring in Support of Criminal Complaint

I, Brian Nehring, Special Agent of the Drug Enforcement Administration (DEA), being duly sworn, depose and state:

1. I am a Special Agent of the Drug Enforcement Administration and have been so employed since 1991. I am currently assigned to the San Francisco Field Division, Sacramento District Office of the DEA, specifically assigned to investigate federal narcotics offenses.

## Scope of Requested Criminal Complaint

2. This Affidavit is submitted in support of a Criminal Complaint charging the following:

    Count One: Defendants **Robb Harrison CHEAL, Nadeem KHAN, Robert CARILLO, and Ryan CHEAL** with participating in a criminal conspiracy to manufacture at least 1,000 marijuana plants and possess with intent to distribute at least 1,000 kilograms of marijuana, a Schedule I Controlled Substance, between approximately October 1, 2011, and November 8, 2011, in violation of 21 U.S.C. §§ 846 and 841(a)(1),

    Count Two: Defendants **Robb Harrison CHEAL, Nadeem KHAN, Robert CARILLO, and Ryan CHEAL** with manufacture of at least 1,000 marijuana plants, between on or about October 1, 2011, and , November 8, 2011, in violation of 21 U.S.C. § 841(a)(1); and

    Count Three: Defendants **Robb Harrison CHEAL, Nadeem KHAN, Robert CARILLO, and Ryan CHEAL** with possession with intent to distribute marijuana, on or about October 12, 2011, in violation of 21 U.S.C. § 841(a)(1).

## Background of Investigation

3. During early October 2011, I spoke with Butte County Sheriff's Department Sgt. Marty Rolf and Sgt. Steven Collins. Sgt. Rolf related to me that they had become aware of properties controlled by Robb Harrison CHEAL. Specifically, CHEAL controlled a property that was currently being used as the site of a large outdoor marijuana growing operation. According to the Sergeants, law enforcement in Butte County previously investigated CHEAL for cultivating marijuana. I spoke to Sgt. Collins who related to me the following information.

4. On October 3, 2011, Sgt. Collins and Deputy Jack Storne traveled to the gate at the end of Helltown Road, just east of the City of Chico in the unincorporated portion of Butte County. Sgt. Collins related to me that Helltown Road terminated at this access gate which displayed the numerals "13631" on a wooden placard to the left of the metal gate. When they arrived at the fence, they contacted Joseph Peacock. Mr.

1

Peacock opened the gate and allowed Sgt. Collins and Deputy Storne on to the property. Mr. Peacock permitted them to examine the purported "medical recommendations" documenting marijuana patients who would, in theory, justify the large number of marijuana plants being cultivated on the property.

5. Sgt. Collins observed how a total of ten plots of marijuana with each plot containing between 75 and 98 growing mature outdoor marijuana plants. Each plot had between 17 and 19 medical recommendations posted on a board near the plot. A total of 905 marijuana plants were located on this property growing at the time of this visit. It should be noted all the plots appeared to have been planted with about 96 to 98 marijuana plants. However, all of the plots had some plants already harvested leaving just the stocks. I will reference each plot by a number to distinguish between the plots described by Sgt. Collins.

6. While Sgt. Collins was present at Plot 1, he was contacted by Bobby CARRILLO, Saint Jude Richard CARRILLO, and Garrett GRENADO. Bobby CARRILLO explained that he and the other two individuals were managing the growing and harvesting of the marijuana plants on behalf of the PURPLE LOTUS PATIENT CENTER located at 125 N. Jackson Ave., Suite 108, San Jose, California. CARRILLO related that the PURPLE LOTUS PATIENT CENTER had 17,000 members and employed the CARRILLOS, GRENADO, and two others to manage the growing and harvesting of the marijuana.

7. CARRILLO told Sgt. Collins that they were renting the property from Robb CHEAL. CARRILLO said he has only met Robb CHEAL one time to shake his hand. According to CARRILLO, Robb CHEAL and his son, Ryan CHEAL, had a falling out so PURPLE LOTUS PATIENT CENTER attorneys recommended they pay CHEAL's trust instead. Since that time, Rob CHEAL and Ryan CHEAL were allegedly back on good terms but they (CARRILOS, GRENADO, and two others) were still paying the trust. CARRILLO said they paid $100,000 to rent the property which they said was over 2,000 acres. Sgt. Collins later met Ryan CHEAL at Plots 7 and 8. At that time, Ryan CHEAL claimed that he had a physician's marijuana recommendation but it wasn't posted at any of these plots.

8. I learned through a review of the California Department of Justice (DOJ) criminal history for Robb CHEAL that he was arrested in Butte County in 2008 for Possession of a Controlled Substance for Sale, Keeping a Place to Sell/Distribute a Controlled Substance, Possession of a Controlled Substance while Armed, and Receiving Stolen Property. I learned that on June 1, 2010, CHEAL was convicted of a felony for Possession of Possession of an Assault Weapon in violation of California Penal Code Section 12280B, and was sentenced to 90 days jail and 3 years probation. CHEAL's listed occupation was real estate agent.

9. Inquiries with the Parcel Quest website, which accesses County Assessor's Office information, revealed that the CREEKSIDE LAND TRUST was the listed owner of the property located at **13631 Helltown Road, Chico, California**, which

2

corresponded with **Butte County Parcel APN#017-010-045**. I examined the Assessor's Map for this property and observed that this was the first property located along the south side of Helltown Road just north of where it crossed Butte Creek. Sgt. Collins also examined these maps and indicated to me that this was the parcel containing the entrance gate to the properties upon which he traveled on October 3, 2011, and throughout which he observed the various Plots of outdoor marijuana gardens as he drove along the road. Assessor's records revealed that CREEKSIDE LAND TRUST was the listed owner of three additional parcels connected to this first parcel and constituting all of the land on each side of Helltown Road, on the other side of the access gate displaying "13631," to the north where Helltown Road terminated. These parcels were, in order: Butte County APN#063-020-100, Butte County APN#063-10-060, and Butte County APN#063-010-067. Combined, these parcels constituted over 1,000 acres of land.

10. Assessor's information contained within Parcel Quest indicated that the 532 acres constituting APN#063-10-067 had been granted to the CREEKSIDE LAND TRUST in 2010 by Robb CHEAL. Subsequent database checks revealed that CHEAL had, in the recent past (2010), granted a dozen parcels he owned within Butte County to the CREEKSIDE LAND TRUST.

### October 12, 2011 – Car Stop of Nadeem KHAN and Seizure of Approximately One Ton of Marijuana

11. I subsequently spoke with Sgt. Rolph and learned that on October 12, 2011, the Butte County Sheriff's Officer received information that a suspicious vehicle had been observed leaving the area of the Helltown Road property described above. Dispatch informed Deputy Malinowski that a large black SUV was pulling a black enclosed trailer had left that vicinity and requested an area check for the vehicle and trailer.

12. Deputy Malinowski responded to that area and located this vehicle, a 2008 GMC Yukon, displaying California license plate number 6FVX493, pulling a 2012 Haulmark trailer (vin 16HGB2020CA040364), driving eastbound on Skyway Parkway towards the town of Paradise, California. Deputy Malinowski observed that the black SUV and trailer had two vehicles apparently traveling in tandem, in front and in back, and that the lead vehicle, a mini-van, committed vehicle code infractions in front of the officer, such as running a red light from a complete stop and pulling to the center median with hazard lights on. The Deputy interpreted this conduct as an effort to distract him from focusing on the black SUV and trailer. Deputy Malinowski observed that the black SUV had side mirrors that did not extend beyond the width of the trailer, in violation of California vehicle code section 26709(b)(2).

13. Once this vehicle entered the City of Paradise's city limits, Deputy Malinowski initiated a vehicle code stop. The driver apparently did not notice the initiation of the Deputy's emergency lights because of obstruction caused by the trailer and the inadequacy of the side view mirrors on the SUV. The SUV finally pulled over after the Deputy pulled into the center lane and his flashing lights were observed. As the

3

Deputy approached the ~~trailer~~, enclosed trailer the Deputy could smell the distinctive odor of marijuana emanating from within the trailer. Deputy Malinowski identified the driver of the SUV and sole occupant as **Nadeem KHAN**. The Deputy advised KHAN of the vehicle code violation. KHAN said he had just purchased the trailer that day, there was nothing inside it, and that he was not a member of a "Co-Op," or marijuana growing group. The Deputy did not believe KHAN (based upon the overpowering smell of marijuana coming from the trailer) and therefore asked KHAN to exit the vehicle. The Deputy then searched the trailer.

14. Upon opening the trailer, Deputy Malinowski located one-hundred and eighty-nine (189) Home Depot cardboard boxes which all apparently contained bulk marijuana. KHAN then told the Deputy, "I don't want to lie to you, I'm transporting that for the Co-Op." The Deputy reminded KHAN that he had already lied about the trailer and its contents. KHAN said that Sgt. Collins had been to their grow site a few days prior and had conducted an inspection.

15. Based upon these facts, Deputy Malinowski requested Butte County Sheriff's Detectives to respond to this location to conduct further investigation. Butte Co. Sheriff's Detective D. Patterson and Sgt. Rolph responded to the location of the car stop (5660 Skyway Parkway, Paradise, California) and spoke with KHAN. During a tape-recorded interview, officers read KHAN his <u>Miranda</u> warnings. KHAN said he understood his rights and agreed to make a statement. According to KHAN, he had just left a marijuana grow on Helltown Road that Sgt. Collins had conducted a compliance check of a few days earlier. KHAN said he believed the address was 11361 Helltown Road, Chico, California, and that it was at the end of Helltown Road. KHAN claimed he lived at 187 Flying Cloud Isle, Foster City, California, and at 176 Valley View Road, Paradise, California, where he was heading prior to the traffic stop. KHAN related that he was part of the PURPLE LOTUS PATIENT CENTER in San Jose. KHAN said his position at the grow site on Helltown Road was as "security" and he had been working there for nine months. KHAN claimed that during that time he had been paid in marijuana for his services.

16. KHAN told Deputy Patterson that the trailer contained a large amount of marijuana in boxes and that he was taking it to his Paradise residence for final trimming. According to KHAN, he purchased the 20-foot 2012 Haulmark Utility trailer that day from Chico Truck and R.V. for approximately $6,000 cash. A subsequent search of KHAN's vehicle located receipts and paperwork from Chico Truck and R.V. showing that KHAN had, in fact, purchased the trailer for $6,740.45 cash, with an additional $162.22 for a ball-hitch and connectors ($6,902.67 total) at this establishment on October 12, 2011. Deputies found a DMV new vehicle dealer notice of temporary identification had been filled out in KHAN's name. KHAN said he had purchased the trailer for the purpose of transporting the marijuana for the PURPLE LOTUS PATIENT CENTER and expected to be reimbursed by the folks at PURPLE LOTUS.

17. The **processed marijuana bud material** contained in the Home Depot Boxes was subsequently weighed and found to be **one-thousand nine hundred and ninety-six**

4

**(1,996) pounds (or approximately 891 kilograms of marijuana).** Based upon the 1,966 pounds of marijuana in the trailer, KHAN was arrested on state charges for violation of California Health and Safety Code Section 11360, Transportation of a Controlled Substance.

18. During a search of the SUV, Deputies located a large map of Helltown Road with the parcels at the end of the parcel high-lighted. Deputies also located several business cards for the PURPLE LOTUS PATIENT CENTER and the paperwork regarding the purchase of the trailer. During a search of KHAN's wallet incident to his arrest, deputies located Wells Fargo receipts showing that between September 3, 2011, and September 12, 2011, there were $26,000 in cash deposits made to a specific account, two Wells Fargo ATM cards, and a receipt from GYOSF Inc. showing the purchase of an EZ-TRIM for $10,410.58 on September 19, 2011. Cash in the amount of $1,257.00 was also seized from KHAN's wallet.

### October 14, 2011 – Execution of Federal Search Warrants at Helltown Road Properties and Seizure of an Additional One Ton of Processed Marijuana

19. I subsequently obtained federal search warrants, authorized by the United States Magistrate Judge Carolyn Delaney, for all four of the above described parcels in the name of CREEKSIDE LAND TRUST located on Helltown Road beyond the access gate marked "13631."

20. On October 14, 2011, members of various law enforcement agencies and I executed these warrants at the four parcels owned by Robb CHEAL located at 13631 Helltown Road, Chico, California. When the warrants were executed, agents located five Mexican National male adults on the property who claimed they had come from Washington State to assist in harvesting and manicuring the marijuana. **Four-hundred and fifty-one (451) marijuana plants** were still in the various gardens throughout the four parcels comprising the property. It appeared that **four-hundred and fifty-six (456) marijuana plants** had been harvested since the previous week and these plants were being trimmed and were hanging in several open-air multiple acre clearings. At one processing location, agents located approximately sixty (60) Lowes 9 cubic-foot moving boxes which had been loaded with processed marijuana bud, and which were numbered and stacked. The boxes containing the manicured marijuana, as well as the first three marijuana gardens and the entirety of the hanging and drying marijuana, were located on **Butte County Parcel APN#063-10-067 (532 acres)**. I noted that these were similar to the Home Depot moving boxes containing the one ton of marijuana seized from KHAN's trailer on October 12, 2011. Additional processed marijuana bud was located in a nearby drying rack building. The **processed marijuana bud material** contained in the Lowe's Boxes was weighed and found to be **two-thousand one-hundred and twenty (2,120) pounds.** The **hanging and drying marijuana bud material and the marijuana plants** were weighed separately and were found to weigh **six-thousand two hundred and eighty (6,280) pounds.**

5

21. During these search warrants, agents located Gerardo ESPINOZA on a portion of the property. Officers detained him during execution of the warrants. ESPINOZA was armed with a rifle, which he stated he possessed to hunt bear, and he was arrested for possession of a small amount of cocaine on his person. ESPINOZA was read his Miranda warnings. He said he understood his rights and agreed to waive them and make a statement to Butte County Deputy Patterson. ESPINOZA said he had been given permission to be on the property to hunt bear by the property owners, **Ryan CHEAL and Robb CHEAL**. According to ESPINOZA, **Robert CARILLO** had introduced him to Ryan and Robb CHEAL and CARILLO let ESPINOZA through the locked gate and onto the property on or about October 13, 2011. ESPINOZA said CARILLO told him that they were legally growing marijuana on the property.

22. After these properties had been secured and while officers were searching the property, Florention RIOS arrived in a vehicle at the main entrance to the property at 13631 Helltown Road, Chico, California. RIOS said he had been hired by **Robert CARILLO** to deliver supplies to people on the property at least once a week. RIOS related that he delivered food, drinks, fertilizers and whatever else was needed. RIOS stated that CARILLO gave him approximately $1000 per week purchase supplies for the workers. RIOS provided Deputies with the receipts for the supplies he had purchased for the property as CARILLO required those in order to reimburse RIOS.

### Identification of Additional Nearby Creekside Land Trust Property Where Marijuana Grows Were Operated

23. I subsequently learned that in early October 2011, during the aerial surveillance of the four parcels in the name of CREEKSIDE LAND TRUST located on Helltown Road, Sgt. Rolph had also conducted aerial surveillance of the surrounding vicinity and attempted to located additional properties owned by the CREEKSIDE LAND TRUST which, per Assessors Maps and Parcel Quest records, were just west of Helltown Road. Sgt. Rolph made the following observations.

24. On October 11, 2011, at approximately Sgt. Rolph flew in a marked Butte County Sheriff's Office Helicopter to the area of Helltown Road. Sgt. Rolph confirmed that the marijuana gardens along the length of Helltown Road were still being maintained. Prior to this flight, Sgt. Rolph had obtained Global Positioning System (GPS) Coordinates for additional parcels that belonged to CREEKSIDE LAND TRUST. When Sgt. Rolph finished surveillance of Helltown Road, he then flew to the first coordinate for the additional identified CREEKSIDE LAND TRUST parcels in the vicinity at an altitude of more than 500 feet. Once there, Sgt. Rolph located a marijuana garden with growing marijuana plants. Sgt. Rolph then flew over the marijuana grow and acquired a new coordinate over the marijuana plants. That new coordinate was **N39 46.66' x W121 10.49' (#1)**. Sgt. Rolph then flew to the next coordinates he had obtained for parcels listed for CREEKSIDE LAND TRUST. Upon arriving at the next coordinate Sgt. Rolph located another marijuana grow with growing marijuana plants. Officers then flew over those marijuana plants and acquired another set of coordinates. Those coordinates were **N39 46.88' x W121**

**40.39' (#2)**. Following this, Sgt. Rolph then flew to the next set of identified coordinates. Once there Sgt. Rolph located another marijuana grow with growing marijuana plants. Sgt. Rolph then flew the helicopter over those plants and acquired a new set of coordinates. Those coordinates were **N39 47.49 x W121 40.52 (#3)**. Sgt. Rolph then flew to the next set of coordinates he had obtained for parcels belonging to CREEKSIDE LAND TRUST. Upon arriving at those coordinates Sgt. Rolph observed another marijuana grow with growing marijuana plants. Again Sgt. Rolph flew over the marijuana plants and acquired another set of coordinates. Those coordinates were **N39 49.90' x W121 39.85' (#4)**.

25. After returning from these flights, Sgt. Rolph provided the newly acquired coordinates over the observed marijuana gardens to Roy Wallis of the Butte County Sheriff's Department. Officer Wallis plotted the GPS coordinates over a Butte County Parcel Map. Officer Wallis was able to determine all of the newly acquired GPS coordinates were within the boundaries of parcels belonging to the CREEKSIDE LAND TRUST. Officer Wallis determined the following Butte County Parcel umbers in order of the above GPS coordinates: 1.) **017-070-023**; 2.) **017-070-023**; 3.) **063-300-144**; and 4.) **063-010-061**.

26. I subsequently made multiple database inquiries, including with ParcelQuest and Butte County property records, and I verified that these parcels were currently listed in the name of CREEKSIDE LAND TRUST and that CHEAL had granted them to this trust during recent years. I also verified through analysis of the parcel maps available that although these three parcels were located and apparently accessed along Doe Mill Road, parcels with APN#017-070-023 and APN#063-300-144 both abutted the west side of the other parcels owned by CREEKSIDE LAND TRUST which were located along Helltown Road and upon which the marijuana gardens were seized on October 14, 2011, at the time of the federal search warrants.

27. During early November 2011, Sgt. Rolph conducted additional aerial surveillance of Butte County parcels **017-070-023, 063-300-144 and 063-010-061**. During this surveillance, Sgt. Rolph confirmed that although a large part of the open air garden sites had been harvested, there were still many marijuana plants visible which had not been harvested on each of the parcels.

### November 8, 2011 – Execution of Federal Search Warrants at Additional Creekside Land Trust Properties

28. On November 8, 2011, agents traveled to Butte County, California to execute a federal search warrant, authorized by United States Magistrate Judge Dale A. Drozd for Butte County Parcel APN#**017-070-023** (400 acres – no address), which was located off of Center Gap Road northeast of Chico, California. Search warrants had also been obtained for adjoining parcels **063-300-144** and **063-010-061**.

29. At approximately 8:45 a.m., officers drove onto the property and encountered a two camping sites with tents and other signs of occupancy near the south west corner of

the property next to the entrance road. No individuals were located at this part of the property. Immediately on the opposite side of the dirt road and just north of the camping sites, I observed two separate fenced-in marijuana gardens on leveled pads. It appeared that most of the marijuana plants in these two gardens had been harvested.

30. I counted twenty-nine (29) circular plastic-wrap containers with elevated soil in the first garden. All of the containers which had been harvested contained stalks and root-balls. There were four (4) large marijuana plants which had not been harvested remaining in this garden area.

31. I counted forty-four (44) circular plastic-wrap containers with elevated soil in the second garden. All of the containers which had been harvested contained stalks and root-balls. There were twenty-four (24) marijuana plants which had not been completely harvested remaining in this garden area.

32. Agents proceeded along the dirt road on this property and encountered a third garden approximately 100 yards north with a similar adjoining camp site with tents. I counted one-hundred and four (104) circular plastic-wrap containers with elevated soil in the third garden. All of the containers which had been harvested contained stalks and root-balls. There were sixty (60) large marijuana plants which had not been harvested remaining in this garden area.

33. The Butte County Sheriff's Department collected all bulk marijuana, including the marijuana plants and the drying marijuana plant material throughout the property for disposal and destruction off-site per the court order. Sgt. Marty Rolph subsequently informed me that the weight of the plants collected from this parcel during this operation was **440 pounds** prior to destruction.

34. Immediately following this search warrant, agents traveled this same day (11-08-2011) to Butte County Parcel **APN#063-300-144** (140 acres – no address), which was located at the junction of Center Gap Road and Doe Mill Road northeast of Chico, California, in order to execute a federal search warrant.

35. At approximately 11:00 a.m., officers drove onto the property and encountered a large cleared area at the end of the entrance road where numerous rows of round plastic-wrapped soil containers (approximately 3-4 feet across) were arrayed in a garden area. I determined that there were ninety-nine (99) of these containers and that nearly all of these contained marijuana root stalks and root-balls. Eleven (11) marijuana plants remained which had been pruned down to the bare branches or single stalks but which still bore small amounts of leaf and bud material and which appeared still alive.

36. On the west side of this clearing, agents encountered Ahmed NASSER standing next to a white 1989 Chevrolet truck, California license plate number 2RPP934. NASSER was detained, though not handcuffed, for officer safety. Agents searched a white 1972 Dodge Motorhome, displaying California license plate number 6GKJ542, next to the

8

truck, as well as the other tents and drying structures on the property. No other individuals were located on the property.

37. During a continued search of the property, I entered the tents to the south of the garden area and observed that it appeared this area had been utilized to manicure marijuana. I located two live marijuana plants inside the first tent. I proceeded through several tents and down a path leading to an elevated wooden drying shed on the ridge above the garden. Inside this drying shed I observed a large amount of harvested, drying marijuana hanging on cords strung along the top of the interior of this shed.

38. I subsequently spoke with NASSER. I informed NASSER that although he was not under arrest, he was being detained and therefore I read NASSER his <u>Miranda</u> warnings. NASSER acknowledged understanding his rights and agreed to waive them and give me a statement. NASSER related the following information.

39. According to NASSER, he was a friend of an individual from Chico, California, who was named Paul Allen PETERS. NASSER said he had known PETERS for over ten years. NASSER stated that in 2011 PETERS had leased this property from **Robb CHEAL** and had set up a 99-plant outdoor marijuana grow. NASSER said he had stayed on this property during part of the summer and had assisted PETERS in maintaining the growing operation. NASSER stated that he had also assisted in constructing the large wooden drying building on the property.

40. NASSER stated that he had not been on the property for approximately four weeks but that a few days ago PETERS had asked NASSER to travel up to the property to collect the dried, manicured marijuana bud material which PETERS had left behind. I asked NASSER why PETERS had left this behind and why he would not have collected it himself. NASSER admitted that he was aware that approximately a month prior there had been a series of raids on the marijuana gardens below this ridge which had scared everyone. NASSER said PETERS asked him to go to the property for a few days and to clean up as much as possible, to collect the remaining marijuana bud material which had been manicured and packaged, and to transport it down to Chico and to call PETERS when he arrived. NASSER stated that he assumed he would be compensated in marijuana for this work. NASSER said he had driven to the property the day before in his Chevrolet truck and had stayed in the motor home, which also belonged to him.

41. Butte Co. Detective Patterson and I searched the open bed of the Chevrolet truck and observed that it was filled with numerous containers, including an ice chest, a cardboard Home Depot moving box, as well as paper and plastic bags, which all contained a large amount of manicured marijuana bud material. NASSER admitted that this was the marijuana bud that he had collected on the property in order to transport to PETERS. NASSER stated that he had observed the drying marijuana in the shed but did not know what PETERS planned on doing with that marijuana. I

subsequently learned from Butte Co. Sheriff's Detective Patterson that PETERS had been arrested two days prior for murder after allegedly beating an individual to death.

42. The Butte County Sheriff's Department collected all bulk drying and manicured marijuana, including the drying marijuana and the manicured marijuana from the bed of NASSER's truck for disposal and destruction off-site per the court order. Sgt. Marty Rolph subsequently informed me that the weight of the dried and manicured marijuana collected from the drying shed and the vehicle on this parcel was **100 pounds** prior to destruction.

43. Immediately following this search warrant, agents traveled this same day (November 8, 2011) to nearby Butte County Parcel **APN#063-010-061** (80 acres – no address), which was located on the east side of Doe Mill Road northeast of Chico, California, to execute a federal search warrant.

44. At approximately 2:30 p.m., officers walked around the closed metal pipe-gate at the entrance on Doe Mill Road leading onto the property. Officers proceeded up the dirt road leading north and encountered a large three-tiered cleared area at the end of the entrance road on the right. This area was accessed by what appeared to be a newly-cut road leading to three fenced-in curved pads following along the side of the hill. I observed that there appeared to be numerous cut marijuana stalks extending from circular grow areas in addition to numerous rows of round plastic-wrapped soil containers (approximately 3-4 feet across) in this same garden area. I determined that there were ninety-nine (99) of these circular grow pads and containers and all of these contained marijuana root stalks and root-balls.

45. Agents located a camper and a very large multiple-room manicuring-tent and drying-shed at the end of the road which branched to the left and proceeded to the top of the hill above the grow site. Agents encountered the self-identified leasee of the property, Stewart Kelly SMITH, at this trailer as well as four other individuals in the same vicinity whom SMITH subsequently identified as trimmers. During a search of the manicuring-tent, I observed numerous pounds of manicured marijuana bud packaged in boxes and bags throughout this tent as well as shears and additional amounts of marijuana in the process of being manicured. During a search of the connected drying-shed, I located an extremely large amount of hanging and drying marijuana bud material on stalks as well as a total of ten (10) 20-gallon plastic containers/totes which were filled with manicured marijuana bud material.

46. I subsequently searched a tent which was located in the middle of the outdoor garden area on the side of the hill. During this search, I located paperwork including a 2011 lease document in the name of SMITH documenting an agreement to lease the property for two years from the CREEKSIDE LAND TRUST for "agricultural purposes" and agreeing to pay $25,000 per year. This lease included several attached and incorporated "EXHIBITS" including the grant deed in the name of **Rob CHEAL** and the name of the current trustee, David MERCADO. I located further paperwork including a 2011 receipt from a earth-moving company to SMITH for over $9000 of

10

work cutting roads and leveling and constructing the garden pads on the side of the hill.

47. I subsequently spoke with SMITH. I informed SMITH that although he was not under arrest he was being detained and therefore I read SMITH his Miranda warnings. SMITH acknowledged his rights, agreed to waive them, and provide a statement.

48. According to SMITH, he had been friends with **Robb CHEAL** for approximately eight years. SMITH stated that he had during this time worked for CHEAL as a handyman and property maintenance worker. SMITH stated that CHEAL owned approximately ten residences in the Chico area which he rented to college students. SMITH cleaned and performed maintenance of these residences on a regular basis.

49. SMITH stated that CHEAL also owned numerous rural properties including the parcel SMITH was leasing. SMITH said CHEAL had, within the last couple of years, transferred all of his property into the CREEKSIDE LAND TRUST and had initially made his son, **Ryan CHEAL**, the executor of the trust in order to give Ryan CHEAL something to do, e.g. managing and maintaining the properties. SMITH stated that recently Rob CHEAL and Ryan CHEAL had a falling out and Rob CHEAL had replaced Ryan CHEAL as the executor.

50. SMITH stated that the difficulties between father and son were exacerbated by the fact that Ryan CHEAL was sub-leasing properties and "cutting side deals" with people without informing Robb CHEAL. SMITH stated that he was aware that the large property owned by Robb CHEAL and consisting of multiple parcels on Helltown Road had been raided by the federal government the previous month. SMITH stated that this was Ryan CHEAL's fault because he had brought in the marijuana dispensary people from the Bay Area without initially informing Robb CHEAL and that Robb CHEAL had been upset because he had not been consulted.

51. I told SMITH that I believed Robb CHEAL had in fact negotiated a deal with "the club" leasing those properties. SMITH replied that Robb CHEAL had come in and met those people and "took over" from Ryan CHEAL, but he had not originally agreed to the lease. I told SMITH that Robb CHEAL had been renting and leasing properties to numerous individuals over the years, such as SMITH and the people who were leasing the additional properties agents had executed search warrants at that day, specifically with the knowledge that these persons were leasing the properties with the sole intention of growing marijuana. SMITH stated that this was true and that CHEAL had been more angry about the fact that the people on Helltown Road had been "way too big" and drawn attention to everybody else. SMITH said he had been aware that CHEAL had been leasing the other properties that had been raided that day just south of his (SMITH's) parcel to separate people who were growing marijuana, as well as another large parcel on the west side of Doe Mill Road.

52. SMITH stated that during the summer, SMITH had suggested to Robb CHEAL that he replace Ryan CHEAL as trustee with SMITH's ex-brother-in-law, a fireman from

11

Chico named Dave MERCADO. SMITH stated that CHEAL made MERACDO the trustee a during the summer and SMITH signed a two-year agricultural lease agreement in which he agreed to pay $25,000 per year. SMITH stated that he had obtained a medical marijuana recommendation and had paid SHANDELL CONSTRUCTION to come in and level and grade the pads constituting the gardens. SMITH admitted he grew 99 plants and started harvesting about 4 weeks prior to our conversation. SMITH said he paid the other people on the property to assist him in manicuring this marijuana.

53. The Butte County Sheriff's Department collected all bulk drying and manicured marijuana for disposal and destruction off-site consistent with the terms of the Court's authorizing orders. Sgt. Marty Rolph subsequently informed me that the weight of the dried and manicured marijuana collected from this parcel during this operation was **440 pounds** prior to destruction.

54. I subsequently learned that during the execution of the search warrants at the Helltown Road properties on October 14, 2011, Deputies had located a trailer at the extreme north end of the property where ESPINOZA had been located. Inside this trailer, Deputies located a receipt in the name of SMITH with his address from ACME Toilet Rentals; a Grant Deed from Robb CHEAL to SMITH for Parcel #017-070-023 with no date on it; paperwork from Fed Ex and Cost-U-Less in the name of SMITH with his driver's license number; and a United Rentals receipt in the name of SMITH. Next to the trailer, Deputies located a wooden shed which was being utilized as a manicuring and drying location for marijuana and where marijuana bud was hanging on lines and where manicured marijuana was drying on tarps; there was a very large amount of manicured marijuana in this location. Inside and outside the trailer Deputies located numerous Home Depot cardboard moving boxes which corresponded to the boxes seized from KHAN on October 12, 2011, which had contained the 1,966 pounds of marijuana.

## Conclusion

55. Based on the foregoing, I believe that probable cause exists to charge the following:

Count One: Defendants **Robb Harrison CHEAL, Nadeem KHAN, Robert CARILLO, and Ryan CHEAL** with participating in a criminal conspiracy to manufacture at least 1,000 marijuana plants and possess with intent to distribute at least 1,000 kilograms of marijuana, a Schedule I Controlled Substance, between approximately October 1, 2011, and November 8, 2011, in violation of 21 U.S.C. §§ 846 and 841(a)(1),

Count Two: Defendants **Robb Harrison CHEAL, Nadeem KHAN, Robert CARILLO, and Ryan CHEAL** with manufacture of at least 1,000 marijuana plants, between on or about October 1, 2011, and , November 8, 2011, in violation of 21 U.S.C. § 841(a)(1); and

Count Three: Defendants **Robb Harrison CHEAL, Nadeem KHAN, Robert CARILLO, and Ryan CHEAL** with possession with intent to distribute marijuana, on or about October 12, 2011, in violation of 21 U.S.C. § 841(a)(1).

_____
Brian Nehring, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before
me on the 17th day of February, 2012

_____
Honorable Kendall J. Newman
United States Magistrate Judge

Approved as to form:

_____
Jason Hitt
Assistant U.S. Attorney

13